Good afternoon, Illinois Appellate Court. First District Court is now in session. The First Division, the Honorable Justice Carl Walker presiding. Case number 1-8-1746, People v. Joden-Collins. Thank you very much, Darren. And let's start by, I want to introduce the justices that are here. I know that it shows up differently on the screen, so I can't tell you who's to my right or my left, necessarily, because my screen could be different from your screen. That's how Zoom works sometimes. But we have Justice Hyman and Justice Coughlin, and I'm presiding, Justice Walker. So we thank you for being here today. We're looking forward to your arguments. I want to start by having you each to introduce yourselves. Let's start with the appellate. My name is Samuel Steinberg of the Office of State Appellate Defender. Yeah. Thank you. And the appellate? Good afternoon, Your Honors. I am Assistant State's Attorney Joseph Alexander on behalf of the people of the state of Illinois. Okay. And Mr. Spielberg, Mr. Alexander, thank you. How much time do each of you need? If you can let us know that now, that'll be helpful. And also if you intend to save any time for rebuttal. So we'll start with you, Mr. Steinberg. Fifteen minutes for the opening and then three minutes for rebuttal. Okay. And Mr. Alexander? I anticipate my argument not taking longer than ten minutes. Ten minutes. Okay. And then we want to just simply bring to your attention that very often we will ask lots of questions, and because of all of our questions, you may not be able to get to your argument. So if that happens and we tell you that you're past your time, we do want you to let us know that you have something pressing that you want to bring to our attention, and we will allow you to do that because, again, the justices are not trying to cut you off if we're asking a lot of questions. It's simply because we want to get the information. So please just let us know if there's something else you need to say after your time is up. Okay. And with that, we are going to ask that you go ahead and begin. Okay. May it please the court. My name is Samuel Steinberg of the Office of State Appellate Defender, and I represent Jodan Collins. I plan to discuss the issues relating to the body camera footage and audio, starting with the Body Camera Act and going back to the hearsay issue. I will gladly address any other issue raised in my briefs. Two years prior to the December 16, 2017 encounter between Officer Hernandez and Mr. Collins, the Illinois legislature enacted the Illinois Body Camera Act. It required officers to have their body cameras running during any law enforcement activity. This included pursuits. It also required officers, upon exiting any police vehicle, to have their vehicle running, to have it on. Is there any issue with regard to the act in this case? Yes, Your Honor. Here, trial counsel was ineffective for failing to utilize the Body Camera Act. Specifically, Section 10-30 allows for a jury instruction to consider the fact that the officer intentionally did not turn on his body camera. It also allows the jury to consider whether the state has considered to provide a reasonable justification for such a failure. Here, the facts support a conclusion that Officer Hernandez was ineffective. Officer Hernandez intentionally did not start the vehicle. Him and his partner, Joe Lopez, were on patrol late at night. They're part of the 11th District Tactical Squad. They're in an area that they plan on patrolling for gangs and other drugs. As they're driving by a lot at 1 a.m. in the morning, they see three, who Hernandez describes as suspects, just standing in the middle of the lot. Hernandez is in the passenger side. His hands are open. They're free. He's aware that he has a body camera on him. He tested it beforehand. He does not see any signs. Is there a more important argument here about the hearsay? The hearsay, it's kind of a combination of both. The officer kind of controlled on the body camera when he wanted, you know, he was able to, during the chase, he did not have his camera on during the initial part of the chase. Right, but if we find that the audio was hearsay, then this issue is not relevant, right? This court would have discretion to consider that issue. It might become relevant on remand. It might become a matter of great public importance, but of course... Why do you say that the court would have discretion? Isn't that an issue that you raised? Yeah. I realize that they're claiming that you waived it, but they're not arguing that it wasn't otherwise preserved. And when you say we have discretion to consider it, well, if the issue is before the court, aren't we required to consider it regardless of how we rule on it? It's certainly likely to reoccur on, it's certainly become an issue upon remand. And I've seen courts where they have reversed. I've seen this court reverse and not consider another issue raised where the other two... No, I think you're misunderstanding the point because the point that Justice Hyman is raising is, and we're not ruling on this, but the point he's raising is that the issue of whether or not the officer was in compliance with the statute and in compliance with rules of the police department may be relevant in a disciplinary proceeding. But in this case, the real relevant issue is not whether or not the statute was violated. The real issue here before us today is whether or not there was inappropriate hearsay admitted into evidence. I think that's the point you're making, correct, Justice? Yes. And the hearsay in this case is certainly troubling. And at no time did the defense invite any error regarding the hearsay issue. During a motion in limine pre-trial, we objected. During trial, we objected to the use of the audio. Even when the CD was introduced formally to the jury, we objected. We understand that, but we don't want you to ignore the issue raised by the state. The issue the state has raised is that you actually used video evidence yourself from body camera in your case-in-chief. That's what the state's arguing. We relied on the video. We did not really rely on the audio. Once the state was allowed to introduce the audio during their case-in-chief and during Officer Hernandez's direct testimony, the defense had to respond. We were put in this hole that the state kind of dug us out. If it's a basketball game, we were playing defense, and the state was just charging at us. We had to kind of throw it out there. Now, here, the hearsay statements are troubling because it's just the danger of why we don't allow hearsay. The reason why we don't allow hearsay is because just because a statement is repeated doesn't necessarily make it true. Here, Officer Hernandez's statements, for example, you want to go back to the lot restarted. He dropped it there. I got him. Go back to the lot where he ran through. Dude, it's right there in the middle of the lot. It's a pistol squad. He dropped a pistol right there in the middle of the lot. This is all while my client is standing next to Hernandez, and my client has remained silent. It implies that my client has dropped a gun in that lot. I mean, the state's just repeating it, and they used it during his testimony. Yes, Your Honor. Wasn't Hernandez just narrating an occurrence that wasn't captured in the video? Isn't that significant or a piece of evidence? He is using his, what the state's using is out-of-court statements to just bolster his testimony. He's not narrating it. This is after the fact. My client has been arrested. It is not a press, and furthermore, under People v. Abrams, there is no present-sense statement. Was there a mystical note in the course of conduct of why the officer went back to where he was? How do you respond to that? The course of conduct instruction, the investigative procedure and background exception usually applies when an officer usually talks to a witness. Under that exception, cases such as Gatcho and as well as Jura, you're allowed to, officers are allowed to limit it. You're allowed to testify that you spoke to a witness. However, the contents of that conversation is off-limits. Here, Officer Hernandez did not learn anything from his own statements to the, on the radio. These were his own state, I mean, these were him repeating his own statements. If another officer had, you know, recovered the gun, for example, Mr. Lopez has regarded, Lopez could testify, oh, I heard Officer Hernandez on the radio, and then I decided to go back. He wouldn't be able to testify that, oh, Officer Hernandez said he dropped the gun right there. The investigative procedure is limited to course of conduct. Furthermore, prior to even introduction of the video and audio, Officer Hernandez was able to describe the entire pursuit. He was able to describe him getting out of the vehicle, you know, himself getting out of the vehicle, chasing after college, chasing, crossing Fulton, you know, going across Walton, crossing Fulton Street, crossing, you know, turning corner, having, slowing down, and, and just shining a flashlight on the defendant and even waving the other officers down before returning to the lot. At that point, the, his audio was, was unnecessary to describe. This is a relatively simple case where the jury did not need this. What you're saying is that it was bolstering. Is that what you're saying? Yes, I'm not, and I'm not just saying that. I think on I think during 350, like on page 360, during the state's closing argument, the state called this circumstantial evidence, and this is on their open, direct closing argument, where they're saying everything, you know, this bolsters his testimony. Everything, you know, look at his words, you know, he's following, he's radioing his command. So it's not just me bolstering his testimony, it's the state. And the reason why the state's bolstering his testimony is because if you look at the area, you know, there's three other suspects in the area. It's that night on the video when the officer does return to the area, which was never shown on the video. It's pitch black and you don't see, you know, it's pitch black. There was my question. I think we agree that your position is that that was improperly used by the state to bolster the testimony of if I understand you correctly. Yes, your honor. And they used it on direct testimony. And it was certainly harmful because the state relied on it. There was even no forensics tested. Hernandez testified that he wanted the gun tested for DNA and fingerprints. Officer Franks did not recover any DNA fingerprints. This is a single credibility case. The use of hearsay was incredibly harmful to this. And it's kind of like the radio calls and juror. It's the state relying on a police report too. You're saying this is not harmless error? No, it cannot be harmless error. It is prejudicial and the state relied on, I mean, it was made a feature of their closing argument in case in chief. This was also never used as a prior consistent statement. I mean, properly admitted as a properly consistent statement. The defense raised the argument of tunnel vision. The state never sought to admit as a prior consistent statement and never use a jury instruction, a limiting jury instruction. This was straight out hearsay. The state used it to prove truth of the matter asserted. With no exception to the hearsay rule applying. This coupled with obviously the officer control, the officer controlled when he can do it. And this was not an excited utterance at all. I realized the state did not provide much argument in the brief regarding the excited utterance exception. But here the officer is aware that he's in the area. This is a pursuit, nonviolent. The gun is on the ground. This isn't like the car chase in Abrams. This officer has five years of experience. He's part of a tactical squad that targets this area. He's running over fences. While this is a pursuit, there's nothing to indicate that this is out of the ordinary. His statements on the police report are akin to hearsay statements. I mean, his statements on the police officer would make in a police report that we generally don't allow, whether it's under the rules of statutory rules of evidence or even the public records exception. You run out of time. So if you're going to address the other three issues, you may want to go ahead and move on. I will address these. Just a point about the closing arguments is that during the closing arguments, you see on the video, my client remains silent completely silent during the encounter. But the state tries to use the silence against him by saying, when he is caught, he's not saying, I didn't do anything. I didn't do anything. He's resigned to his face. And then the state misstates the evidence by saying, when the officer said, it's a black gun, you, the state used the pronoun you, dropped the black gun. I didn't say anything. The state is using my client's silence against him during closing arguments. And there's no curative jury instruction on the defendant's post arrest silence as there is with, you know, a defendant not testifying at trial. Because the state relied on hearsay evidence and their closing argument dispaired my client's constitutional rights as well as misstating the evidence. And counsel was ineffective for failing to utilize a body camera act. I ask that you reverse and remand. Thank you. Now you realize that on that issue, the state is arguing that it does not amount to plain error. Yes. Yes. Yes. Your honor is our position that it does similar to my harmless error argument. This was a closely balanced case. The state made multiple comments about defendant trying to take responsibility while he's sitting there in the courtroom. The state, it's a pattern of conduct that the state, the state's, the use of the defendant's silence, as well as this taking responsibility theme implies that my client is doing something improper by deciding to go to trial and sit there and face his peers in trial. That's, that would to allow, to allow such a pattern of conduct would kind of make a mockery of the constitution. Sure. Did you want to argue the cumulative effect of the three errors that you've noted? I believe I did. Well, the cumulative effect of that, you've argued the errors. You haven't the state council was aware that the officer violated the body camera. I mean, he was aware that he violated police procedure. He did not utilize a body camera act, which would allow the jury to consider the officer's failure to consider this. Now, just a combination of a, a jury instruction would have added force. Your jury would add the force of law, the cumulative effect, the, all these errors kind of combined into a suit, kind of just a, a messy suit that would that just prejudice defendant. I mean, you have the jury was directed to consider irrelevant hearsay statements as well as irrelevant. You know, the fact that he was institute, you know, irrelevant silence as this court is, as courts have said, post arrest silence is ambiguous and he's under arrest. There's handcuffs. The officer is searching for the gun. So the state's, the state's evidence and it's closing arguments, misdirected the jury's attention away from the evidence. And I thank you. You're used to have time for rebuttal. Mr. Alexander, please. Afternoon, your honors. May it please the court. I am assistant state attorney, Joseph Alexander on behalf of the people of the state of Illinois. In this case, assuming that defendant's claims amount to error, none of those errors either individually or cumulatively resulted in substantial prejudice to this defendant. Because in this case, the evidence was not closely balanced. In fact, this evidence was overwhelming. How can you say that? How can you say that in light of this is a one witness case, basically, right? Yes. And the only, and the only, it's Hernandez, everything. It's there's no, there's no fingerprints. There are other things going on in that area. To say that this is closely balanced. I'm kind of trying to get my hands around that one. Well, your honor, this court has always, has always held that a single eyewitness, if they are credible, it's sufficient to sustain a conviction. And that's not the issue. The issue is there's no fingerprints, no DNA. This case could have gone either way. And isn't the fact that this audio was repeated and the statements were repeated to the jury that that doesn't have any gravitas here? It's our position that it doesn't. And I'll explain why. First, there doesn't need to be fingerprint evidence and DNA evidence in order for this evidence to be overwhelming. What we have here is a eyewitness who saw this defendant throw this gun in the field. Now we have to look at the evidence in its totality and not separate it out. So we have the officer seeing this defendant running, holding his side, and then seeing the defendant drop this gun in a vacant lot. Then we have the officer going back to that exact same spot and retrieving that gun. So why do we need the audio? So the question is the audio, not the video. So you just said we have all that. So what do we need the audio for? Well, and this goes to why this isn't substantially prejudicial. Because the audio actually doesn't provide anything more than what the officer testified to in his direct testimony. The officer testified that he was instructing his partner where this gun was. And then the officer himself went to the lot. Now, we argue in our brief that this was course of investigation. And the reason we argue that is because without that testimony, this jury would have been left with a really prominent question. If you're instructing your partner to go to this lot, then why did he not recover the gun? And so this is one of those interesting- Mr. Alexander, wouldn't it have been more appropriate to wait until that point was raised by the defense? And then maybe you could have put it on in rebuttal, but to put it on in the state's case in chief? I have a problem with that. Your Honor, I understand that. And I respect that. But in this case, because it was course of investigation, and when we're dealing with course of investigation, the case law says that you should not get into the substance of the conversation. But the purpose of the course of the investigation exception is to explain to the jury what happened. And to prevent them from just prevent situations where miraculously things was arrested, miraculously this gun was recovered. This case doesn't necessarily fit neatly into the exception, because what we have to do in order to make sure that the jury fully understands how this investigation played out was to get into the substance of that conversation. Your argument subsumes, I think what you just said is conceding what the defendant is saying. Because the substance of the investigative conversation is what we're talking about. This is substantive, not an investigative process question. So you just said it's substantive. Well, that's their case. They say it's substantive. If I wasn't clear, that was not my point. My point is that in order to fully explain to this jury what the course of the investigation was, it was necessary for this video to be played. And when it was played, what we heard was the course of the investigation happening. No, it was after the investigation because he arrested him. And then the statements were made, correct? The incident was still ongoing because we had what turned out to be a loaded gun still lying in the middle of a field. And the officers trying to find that gun. No, but if you don't have that audio, you still have the testimony of finding the gun, right? Yes. Why isn't that substantive? So it's an investigative process. That's not about the it's part of the substance of conversation dealing with the investigative process, which is the recovery of this gun. That's what it is. Just because it was details about how to locate this gun doesn't mean it wasn't part of the investigative process. And as your honor said, we had this officer testify at trial that this defendant dropped the gun and then this gun was recovered in the exact spot that the officer said he saw the defendant drop it. So if we have that testimony, even if these statements were improperly admitted, they were not prejudicial because the jury had already heard where this gun was located and that the officer was able to locate it in that exact spot. So if that's the case, Mr. Alexander, why didn't you just concede that on the motion to preclude the introduction of the audio? If you're saying the audio offered nothing new and that you already had the testimony of officer Hernandez to simply explain why he was the one to recover the gun. Although I don't think that there's anything unusual about the arresting officer going back to recover the gun as you make it sound like that's something unusual and needed to be explained. I don't think that's why didn't you concede that? I'm sorry, not you, but the trial, but the state's attorney handling the trial. Your honor, I am not privy to what their trial strategy was. That's where the problem lies. That's where the area is. So now the next question is, if we believe that that was in fact error for the video, for the audio to be admitted, the question now becomes whether or not it's plain error. And I know that you argue that it didn't prevent a fair trial, but I think there's an issue regarding the cumulative effect of these issues. In addition to the fact that the, of course, I also believe that the evidence should not have been admitted in your case in chief. So you can respond to all of that. So let me start with the say, I just discussed the, why we say it's course of investigation. If we look at the record, it was also admitted as an excited utterance by the court. And that was admitted properly because this, this would classify as an excited utterance. There's been case slots to say otherwise. I'm sorry. Go ahead. No, no, I didn't think that was a major argument in your brief. No, it was not a major argument in our brief. It was briefly touched upon, but this court can affirm for any reason in the record. And this was litigated during the motion in lemonade. So it would constitute a, a, an excited utterance because it deals with the statements dealt with this occurrence, which was startling. And I know the police practice. I mean, these are, this is a group that goes out and does what they do. He's not excited. He was, I mean, that's not an, how is that an excited utterance coming from a police? In fact, there are many cases that go the other way for what you're stating all around the country. Again, we're looking at the facts of this case. And what we have is the officer chasing a defendant through a residential area, and then seeing a defendant throw a gun into a field. And it's our contention that even to a seasoned police officer, that's a startling situation. And then the startling situation continue because you have this gun that turned out to be loaded. Mr. Alexander, there's nothing, Mr. Alexander, there's nothing startling in the city of Chicago about someone carrying a gun. When, when last weekend there were 59 people shot, 10 people killed. And you're telling me that there's something unusual about someone carrying a gun? Nothing. Do you want to call it an excited utterance? He's got a gun. It's, it's just, it's, it's, these things are not unusual that we're seeing here. Well, I don't think the standard requires that it be unusual. It just has to be startling to the person perceiving them. And in this case, we have evidence that it was startling to this officer because the officer said he saw a defendant throw the gun into the field. And the officer seeing this slowed his stride because he saw this gun. And we, when we look at the totality of the circumstances, which we have to, when we're deciding whether this was an excited utterance, I point to the fact that we have a loaded gun in the middle of a residential area. And you mentioned that there are... He didn't know it was loaded. But you're assuming it was loaded. He didn't know it was loaded, did he? He didn't know it. He didn't know it was loaded, Your Honor, but it turned out that it was loaded. Well, so what? It doesn't matter what it turned out. That's irrelevant, right? My question is, isn't it irrelevant whether it's loaded or not for purposes of our, of the case here? It's, I will say that it's immaterial to this point that the gun was loaded when he saw it. But what did the officer see? We saw a defendant bleeding the officer, holding his side, and then tossing the gun. What's wrong with that? He actually said he observed. There was nothing unusual. The only thing he saw is this person run. And the fact that people don't want to deal with the police, is that a crime? Is it a crime to run for a police officer? Policeman didn't talk to him? Didn't tell him? I'm going to assume that's a rhetorical question, Justice Simon. I'll answer it. No, it's not a crime. I avoid the police. I'm a judge. But I'm a Black man who avoids the police. When I'm walking my dog, I wave at them. I speak if they're driving by. But I'm certainly not going to go and approach them for any reason. Because that's what I avoid them. When I'm driving down the street, they come behind me. Sometimes I turn off onto a street because I don't even want to be bothered. It's the fact of not wanting to be bothered. And there's courts around this country who have simply found that a Black man fleeing should not be considered any indication of guilt. I might run because Black men avoid contact with police. We do it all the time. I do it. And I'm a judge. I've got an identification in my pocket that shows I'm a judge. And I still avoid contact with the police. So that's irrelevant. With all due respect, Your Honor, I understand that you as a Black man and what's going on in this country have these thoughts and these ideas about whether fleeing is evidence of consciousness of guilt. And I, as a Black man, understand where you are coming from with that. But we have to realize that evidence, fleeing leads to the inference that it is consciousness of guilt. There's also a separate inference that you fled from the police because you were afraid of the police. You didn't want to encounter the police. That inference was actually argued to the jury by opposing counsel. So if opposing counsel can argue that, the competition— I don't want you to spend too much time on that because that's not the issue in the case. The issue in the case is the admissibility of that audio. And I could see that if we start allowing that, I could see this being feigned. Someone could actually commit a murder and after committing the murder have a camera on saying, oh, I can't believe John just shot him. John just shot him. Oh, John killed him. He killed him. He killed him. And because he says it 50 times, doesn't mean that it happened. So, and that's kind of the problem with having this kind of audio allowing it to show that something happened that happened before the camera was ever on. That's another issue here that we have with allowing this kind of evidence to come in. Assuming that this is error, Your Honor, and we'll start from that position that this court finds that this is error. The next step is whether this error actually caused substantial prejudice to this defendant. And we cannot answer that question in the affirmative because there was substantial evidence showing— Well, let's start with whether or not the error was harmless. Whose burden is it? Is it their burden to show that it was not harmless, or is it your burden to show that it was? It is our burden. And the reason we can that burden is because we have the unrefuted, unimpeached, significantly consistent testimony of an eyewitness, which this court has repeatedly held is sufficient to support a conviction. We have the officer saying that this defendant dropped a gun in this specific location. We have the officer going to that specific location, finding the gun. We also have defendant running with holding his side, which an inference is that that was the gun defendant was holding. We have the unprovoked flight, and I know Your Honor has a different interpretation of that, but the case law is clear. Unprovoked flight can be inferred as consciousness of guilt. First, it's not clear. It's definitely not clear because cases go both ways. And second, you just told us why the audio should not be there. Look at what you just told us. All these things you told us, it was without the audio. What purpose they have in the audio where he says four or more times about the gun, and it's black, and it's in the field, and so forth. That's the issue. And you just said, look at all they have. So why did they need to pile on and to use the word that your counsel used, that the state's attorney used at trial, bolster. That's the word they used, bolster. It wasn't inform. It was bolster. And so you just, what you're telling us is, yeah, they did bolster it because that's what we're talking about. You're talking over here. We are talking about the audio. And the reason that I am focusing so much on what was presented, the properly admitted evidence, is because even if that audio was excluded, this defendant would have still been found guilty. And that is what we have to focus on. We don't know that, but that's the issue. That is the issue. You're assuming that issue. The question is, if you don't have the audio, would there possibly have been a different jury verdict? That's true. The answer to that question is absolutely not. And I'm sure if we ask the defense attorney, he's going to say absolutely yes. I mean, that's not an absolute. There's no absolute there. Their answer is based on, what are they basing their answer on? I'm basing my answer, the state is basing its answer on the properly admitted evidence. So if we can look at this evidence and say that this officer whose testimony was not impeached, who was not contradicted, who was unrefuted, and who was corroborated by the actual finding of the gun in the location, if we are now saying that because of inferences that defendant ran because he was afraid, or inferences that maybe this could have happened, maybe this could have happened, these hypotheticals, then we've just done away with the whole harmless error case law. Because now we're not looking at the evidence and whether it was convicted. We're saying that there was an error here. And because there was an error, it's automatically reversible. And that is not what the case law holds. No, that's not the question this court is asking. The question this court is asking is whether or not the defendant received a fair trial overall. That's the real question here. And so it's not just the issue we're discussing now. But for me, it's also the second issue, which you may address now if you want. If we look at the second issue, it is our contention that the prosecutor's comments weren't on the defendant exercising his right. The prosecutor's intent with those comments was not to comment on the defendant exercising his right to trial. And again, I'm just going to go straight to the prejudice. Assuming that that was improper, and there is case law, defendant cites a few cases that discuss saying that it's defendant's responsibility, that that is improper. But if we look at those cases, the court found that those comments were improper. In one case, the court condemned the state for saying those comments. But the court then went on to hold that because the evidence was not closely that given the properly admitted evidence, that this error was harmless. And even if we looked at it cumulatively, the error there, this case shouldn't be reversed, especially where we have the trial court instructing the jury that closing arguments aren't evidence and they need to base their decision on the properly admitted evidence. And we presume that the jury follows the instructions. And if we are now in a position of saying, well, because the state said the jury automatically adopted it, this court has repeatedly said it is not. The difference here is it wasn't necessarily about evidence. It was about the theme of the case presented by the prosecutor. This theme that the defendant now going to trial, he's attempting to shuck some responsibility, as opposed to taking responsibility for the gun. And I guess, being a stand-up person, he's got everybody here for a trial trying to fight this. Well, he has a right to have a trial. Whether he did it or didn't do it, whether he had the gun or didn't have the gun, he had a right to go to trial. That's not shucking responsibility because you choose to go to trial to force the state to prove you guilty beyond a reasonable doubt. The question is not whether or not the defendant did the crime, whether or not the state can prove you guilty beyond a reasonable doubt. So the prosecutor's comments violate his constitutional right, could, if they're simply designed to show that he should not be going to trial on this matter. Your Honor, that's an interpretation of these comments. And if that's this court's interpretation of these comments, I honestly cannot argue with that. But what you said is, it's a comment on his constitutional rights. And what the courts of this country have repeatedly said about constitutional rights is they, a violation of a constitutional right is not always reversible error. And I go back to the prejudice argument. What prejudice did this defendant, what prejudice was he under when we have all of this evidence pointing to his guilt, when we have you. It becomes an attempt to bias the jury against the defendant by telling them that he's shucking his responsibility. This defendant should not even be going to trial. He shouldn't have you here today. That's where the problem comes in. And that's why I'm coming back to what I said earlier. It's the cumulative effect of these things. Even if those statements were admitted, even if those statements, the prosecutor's closing argument is completely taken out of play, even if the hearsay statements are completely taken out of play, what we are left here is still overwhelming evidence of this defendant's guilt. Overwhelming? Now Justice Overwhelming. There are cases where this court has found that the unrebutted testimony of an eyewitness where it is cooperated by physical evidence is overwhelming. And it is not collaborated by physical evidence, no DNA, no fingerprints, no nothing to tie it in. All we have is her and her Hernandez. That's the only thing we have. We have one witness. We have Hernandez. This case rests on him. And what happened? The audio was used over and over the statement several times stated, as Justice Walker said, and that repetition was to bolster, which is what the state said, to bolster what was going on here, not to inform about an investigation. So I'm just using the words that the state's attorney used. Well, the state's word bolster in the context of, specifically in that paragraph, the state's attorney was talking about the map and the route that defendant took, and that bolstered the officer's testimony. And if we want to use the word bolster, if the state improperly used that word, again, if this was improper, and we will, for the sake of argument, let's assume that it was improper. It was improper to admit it. It was improper for the state's attorney to make those comments during closing arguments. We will, for the sake of this argument, assume that that is improper. Does that impropriety require this court to reverse this case, whether you look at the errors individually or cumulatively? And the answer is no. And we still stand by the position that this evidence was overwhelming. And we note that there have been cases where this court has found that the evidence is overwhelming, where there was no fingerprint DNA, where there was no fingerprint evidence, where there was no DNA, where there was an eyewitness who was credible and had positive testimony. And that's why we are saying this evidence is unconfirmed. Isn't part of the reason why this witness was so credible, because this audio was played that bolstered his credibility, the only evidence in the case? I would say that it is not, that that's not the reason that this officer was credible. I will say that this officer was credible, because his testimony was not impeached, and it was unrefuted. And even standing by itself without this audio, it's still credible. And the jury could have still found this defendant guilty based on all of this evidence. And again, I point to the fact that the officer said that this gun was in a specific spot. The officer went back to that spot and found the gun. And so all of that's taken together. This is why we are of the position that this case was, the evidence was not closely balanced. The evidence was overwhelming, and any alleged errors did not result in substantial prejudice to this defendant. And unless this court has any further questions for the reasons stated here, and those stated in our brief, we ask that you affirm this defendant's conviction. I have one other question. And I want to follow up on something Mr. Steinberg said. And that is, if these statements, these oral statements by Hernandez were written in a police report, would they have been admissible? Yes or no? Police reports aren't admissible into evidence. Correct. Okay, thank you. But we're not dealing with the police report, Your Honor. Well, it's the same thing. It's the same, if it's, we're dealing with an audio that is still a statement not by the declarant, you know, out of court. So it is very parallel. And there's case law that talks about how that connection. So I just, there was a point that Mr. Steinberg made, and I wanted to follow up. With all due respect, Your Honor, with that logic, a victim statement that is written in a police report then would be inadmissible. If a victim is identifying the defendant as a person that committed a crime, and that is written in a police report, and police reports aren't admissible, then following that train of thought to its full completion, then that victim's identification would be inadmissible as well. And that's not... But not from the police report, it would have to be from independent source. And here, that independent source was Hernandez's testimony at trial. You wouldn't have both the police report and the statement by the witness. Well, again, as not to beat a dead horse, but again, we, it's our position that these statements were properly admitted. And if they were error, the error was harmless error. And just to Justice Hyman's point, Mr. Alexander, if the witness is testifying, yes, that was him. Yes, I did identify him previously. You wouldn't then have someone to come back and read the police report into evidence, right? That's basically what's happening when you start bringing evidence, having someone place it into evidence, something that a witness can simply testify to. And I accept that point, Your Honor, and I will say that... Well, that's what Justice Hyman was saying, and you weren't agreeing with that. That's all he was saying. You were disagreeing, but that's all he was saying. Whether there are different hypotheticals that we can discuss, and there are many, whether we want to put things in police reports and admit them and not admit them, the summary statement here is that defendants suffer no prejudice. And if this court decides, and based on defendant not suffering prejudice from these errors individually or cumulatively, we ask that this court affirm the defendant's conviction. Anything further, Justices? No. Okay. All right. Mr. Steinberg. Thank you, Mr. Alexander. Thank you. As this is hearsay, this is clearly... If these were in a police report, you couldn't use these. There is a public records exception. However, that public records exception in 8038 expressly bans an officer's observational statements. And this is meant to... This is meant so the state doesn't rely on hearsay. As quasi-judicial officers, prosecutors should respect, should not rely on hearsay or disparage a defendant's constitutional rights during closing arguments. Everything here was clearly harmful. Now, even if you look at the running, who's he running from? These officers are in an unmarked police car. It's late at night. They are in plainclothes. From the defendant's perspective, he might just see two men slowly get out and walk towards them for no reason at 1 PM. I might be running in that situation. That is not reliable evidence. Wasn't it 1 AM? You said 1 PM. 1 AM in the morning. Okay. All right. Yeah. Furthermore, you don't see... The officer's testifying that I was within five to eight feet of him, which is like half the distance of a free-throw line. And he's falling and he falls behind a little, but nowhere in the camera does it show the defendant in the camera until the officer decides to turn the corner. You don't see really much of the chase or the defendant in the chase. And there are two other individuals in it. Moreover, when the defendant, when Hernandez does return to the area, he's kind of shining his flashlight in different areas. He even shines it in one side lot before kind of going to his, I think, left or right. And before going back to where he thought he saw a gun. And in Jura, this court kind of rejected the state's argument, but to state that such an argument can be harmless or prejudicial, the state carefully uses the word eyewitness. But here, we don't just have an eyewitness. We have a police officer. And in general, the testimony of a police officer is considered harmful. That's why in Jura, where we get three officers testify regarding hearsay statements, they reversed. Here, we only have one with no physical evidence. And the combination of the state relying on hearsay, no curative instructions regarding defendant's post-juris silence or any other activity, limiting purpose for the hearsay, it's disparaging remarks and counsel's just failure to utilize a standing order requires this court to reverse. And I thank you. Okay, thank you. Mr. Steinberg, Mr. Alexander, excellent job on both sides. Your briefing was excellent. Your argument has been excellent. And we appreciate that. We always appreciate excellence. And that's what we've gotten here today. So on behalf of the other justices, thank you. Okay, the hearing is adjourned.